**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **SETHMAR TRANSPORTATION, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DUAL NORTH AMERICA, INC., et al.,**<br><br>**Defendants.** | **Case No. 2:26-CV-02326-JAR-ADM** |

**MEMORANDUM AND ORDER**

Plaintiff Sethmar Transportation, LLC brings this diversity action against Defendants DUAL North America, Inc. ("DUAL"), Chaucer Syndicate 1084 of Lloyd's ("Chaucer"), and Houston Casualty Company ("Houston") (collectively, "Defendants"), for declaratory judgment and breach of contract. Before the Court is Defendants' Motion to Transfer Venue Under 28 U.S.C. § 1404(a) (Doc. 13), DUAL's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) (Doc. 10), and DUAL's Request for Hearing on Motion to Dismiss (Doc. 19). The motions are fully briefed, and the Court is prepared to rule. For the reasons explained below, the Court denies each motion.

## I. Background

The following facts are alleged in Plaintiff's Complaint or included in the insurance policy attached to the Complaint.[1] Plaintiff is a full-service logistics solutions provider that offers a wide range of freight transportation services. In February 2025, Plaintiff purchased contingent cargo insurance from Defendants for the policy period of February 23, 2025 to

[1] *See* Fed. R. Civ. P. 10(c).

February 23, 2026 (“the Policy”).[2] Defendants mailed the Policy to Plaintiff's office in Overland Park, Kansas.[3] The Policy was “issued in consideration of Annual Deposit Premium[s],”[4] which Plaintiff timely paid after receiving the Policy.[5] Section 46 of the Policy included coverage for Contingent Motor Truck Cargo, with policy limits of $300,000 per truck (“Section 46”).[6] The Policy also provides a separate Fraud and Deceit Extension with a $50,000 per occurrence sublimit.

In December 2025, Plaintiff brokered two shipments to motor carrier DEO Logistics, Inc. after “thoroughly vett[ing] DEO through a carrier authentication platform and standard industry procedures.”[7] DEO provided Plaintiff with the driver identities and precise tractor and trailer information for the shipments. After confirming that the driver, tractor, trailer, and license plates matched the proper credentials, Plaintiff released the cargo to DEO.

But after the cargo was picked up, it “was stolen, lost, or otherwise misappropriated and never delivered to its destination.”[8] The cargo was valued at $245,721.72 (“the Losses”).[9] After formal claims were denied by DEO's cargo insurer, Plaintiff submitted claims for the Losses to Defendant pursuant to Section 46. However, DUAL—through its third-party administrator Pequod Associates, Inc.—asserted that the coverage was only subject to the $50,000 per occurrence sublimit for the Policy's Fraud and Deceit Extension, not Section 46's $300,000 per

---

[2] Doc. 1 ¶ 25; Doc. 1-1.

[3] Doc. 1-1 at 1 (“6330 Sprint Parkway, Suite 100, Overland Park, KS 66211

[4] *Id.* at 3.

[5] Doc. 1 ¶ 39.

[6] Doc. 1 ¶ 28; Doc. 1-1 at 31.

[7] *Id.* ¶ 17–18.

[8] *Id.* ¶ 23.

[9] *Id.* ¶ 24.

truck policy limit. Plaintiff alleges a claim for breach of the insurance contract and seeks a declaratory judgment that the Losses "fall squarely within [Section 46]," and that "Defendants' attempt to apply the Fraud and Deceit Extension is contrary to the Policy's language and the undisputed facts."[10]

Defendants filed a motion to transfer venue, pursuant to 28 U.S.C. § 1404(a), arguing that this Court is an improper forum under the Policy's forum-selection clause. DUAL filed a motion to dismiss for failure to state a claim, arguing that it was improperly named as a defendant because it owes no legal duty to Plaintiff and cannot be held liable for claims under the Policy. The Court addresses each motion in turn.

## II. Motion to Transfer Venue

Section 32 of the Policy contains a forum-selection clause that provides in relevant part:

> Any suit, action or proceeding arising out of or based upon this policy shall be instituted in the United States District Court for the Southern District of New York *or the United States District Court in the district in which this policy was issued*. Each party to this contract submits to the exclusive jurisdiction of such courts in any suit, action or proceeding and waives any objection to venue of any suit, action or proceeding in the said courts.[11]

A mandatory forum-selection clause is properly enforced by a motion to transfer pursuant to 28 U.S.C. § 1404(a).[12] Generally, when considering a motion under § 1404(a), the Court reviews several factors, including the Plaintiff's choice of forum.[13] But in the case of a

---

[10] *Id.* ¶ 36.

[11] Doc. 1-1 at 18 (emphasis added).

[12] 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."); *see also Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59, 61 (2013) ("[Section] 1406(a) and Rule 12(b)(3) are not proper mechanisms to enforce a forum-selection clause and . . . § 1404(a) and the *forum non conveniens* doctrine provide appropriate enforcement mechanisms.").

[13] *Id.* at 63.

mandatory forum-selection clause, "the plaintiff's choice of forum merits no weight."[14] And while the Court is allowed to consider public interest factors, "those factors will rarely defeat a transfer motion, [and] the practical result is that forum-selection clauses should control except in unusual cases."[15]

The parties agree that Section 32 is an enforceable mandatory forum-selection clause.[16] However, they dispute whether this Court is located "in the district in which this policy was issued" as provided in Section 32. Thus, the Court must construe this language in the policy to resolve the motion to transfer venue.

The parties agree that New York law governs this contract dispute under the choice-of-law provision in the Policy. Indeed, in a diversity action such as this, the Court must apply the choice-of-law rules of the state in which it sits.[17] With certain exceptions that do not apply here, "[w]here the parties to a contract have entered an agreement that incorporates a choice of law provision, Kansas courts generally effectuate the law chosen by the parties to control the agreement."[18] Under New York law, "[i]nsurance policies are interpreted according to general rules of contract interpretation."[19] The policy should be construed in accordance with the intent of the parties "as derived from the plain meaning of the policy's terms."[20] And the policy should be "read in light of common speech and the reasonable expectations of a businessperson."[21]

---

[14] *Id*.

[15] *Id*.

[16] *See* Doc. 18 at 1; Doc. 13 at 1.

[17] *Century 21 Real Est. Corp. v. Meraj Int'l Inv. Corp.*, 315 F.3d 1271, 1281 (10th Cir. 2003).

[18] *Brenner v. Oppenheimer & Co.*, 273 Kan. 525, 539 (Kan. 2002).

[19] *Vale Fox Distillery LLC v. Cent. Mut. Ins.*, 799 F. Supp. 3d 292, 300 (S.D.N.Y. 2025) (quoting *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 98 (2d Cir. 2012)).

[20] *Id.* (quoting *Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins.*, 189 F.3d 208, 215 (2d Cir. 1999)).

[21] *Id.* (quoting *United Nat'l Ins. v. Granoff, Walker & Forlenza, P.C.*, 598 F. Supp. 2d 540, 546 (S.D.N.Y. 2009).

"[T]he Court's analysis properly starts with the four corners of the [p]olicy to determine if there is any ambiguity."[22] Whether a provision is ambiguous "is a question of law to be resolved by the courts."[23] "The test for ambiguity is whether the provision is 'susceptible of two reasonable interpretations.'"[24] If the policy's provision is unambiguous, the provision must be interpreted according to its "plain and ordinary meaning."[25] But "ambiguities in an insurance policy must be construed against the insurer in favor of the insured."[26]

The term "issued" is not defined in the Policy, so the Court first considers its ordinary meaning to determine if there is any ambiguity. "The New York courts have not expressly resolved the meaning of the term 'issued' in the insurance context" when construing that term as used in the New York insurance statutes.[27] One state court interpreted "issued" to mean when the policy "is delivered and accepted, whereby it comes into full effect and operation as a binding mutual obligation, *or* when it is prepared and signed, as distinguished from its delivery to the insured."[28] The Court of Appeals of New York found that the ordinary meaning of

---

[22] *Porco v. Lexington Ins.*, 679 F. Supp. 2d 432, 435 (S.D.N.Y. 2009).

[23] *Schron v. Grunstein*, 917 N.Y.S.2d 820, 825 (N.Y. Sup. Ct. 2011).

[24] *Concordia Gen. Contracting Co. v. Preferred Mut. Ins.*, 46 N.Y.S.3d 146, 148 (N.Y. App. Div. 2017) (quoting *New York v. Home Indem. Co.*, 486 N.E.2d 827, 829 (N.Y. 1985)).

[25] *Vale Fox Distillery*, 799 F. Supp. 3d at 300 (quoting *Lavanant v. Gen. Accident Ins. of Am.*, 595 N.E.2d 819, 822 (N.Y. 1992)).

[26] *Sea Ins. v. Westchester Fire Ins.* , 849 F. Supp. 221, 224 (S.D.N.Y. 1994); *see also Lend Lease (US) Constr. LMB Inc. v. Zurich Am. Ins.*, 71 N.E.3d 556, 560 (N.Y. 2017) ("Of course, where the policy may be reasonably interpreted in two conflicting manners, its terms are ambiguous, and any ambiguity must be construed in favor of the insured and against the insurer." (citation modified)).

[27] *Indian Harbor Ins. v. City of San Diego*, 972 F. Supp. 2d 634, 649 (S.D.N.Y. 2013) (interpreting the term "issued" as used in N.Y. Ins. Law § 3420).

[28] *Taggert v. Sec. Ins.. of New Haven, Conn.*, 100 N.Y.S. 2d 563, 564 (N.Y. App. Div. 1950) (emphasis added).

"issued" under N.Y. Insurance Law § 3425 is "[t]o send out or distribute officially."[29] And one dictionary defines the term as "[t]he act of circulating, distributing, or publishing."[30]

Defendants summarize these authorities as confirming that "issued" is unambiguously limited to where an act by the insurer occurred, limiting the Policy to a single place of issuance. Defendants argue that the single place the Policy was issued was San Diego, California—DUAL's principal place of business—based on the Policy's signature block.

However, the caselaw demonstrates that "issued" is ambiguous in the insurance context because multiple reasonable interpretations have been proposed for the term.[31] New York caselaw is not conclusive that the location where a policy is "issued" is limited to where a physical act by the insurer occurred. The court in *Taggert* proposed two potential locations that a policy could be "issued": where the policy "is delivered and accepted," or where it "is prepared and signed."[32] The *Taggert* court was not forced to choose between these two interpretations because both the "prepar[ation] and sign[ing]" and "delivery to the insured" occurred in the same state—New York.[33] The facts of this case are distinguishable because the Policy was prepared and signed by DUAL in San Diego, California, but it was delivered and accepted by Plaintiff in Overland Park, Kansas.[34]

---

[29] *Rosner v. Metro. Prop. & Liab. Ins.*, 754 N.E.2d 760, 764 (N.Y. 2001) (quoting Black's Law Dictionary 836 (7th ed. 1999)).

[30] The American Heritage Dictionary of English Language 931 (5th ed. 2022).

[31] *Indian Harbor*, 972 F. Supp. 2d at 649 ("[B]oth asserted definitions—"prepared and signed" versus "sent out or distributed officially"—find some support in the case law.")

[32] *Taggert*, 100 N.Y.S.2d at 564.

[33] *See id.* at 564–65.

[34] Defendants argue that the Policy was also "delivered and accepted" in California because the Policy became mutually binding when it was signed by DUAL. Doc. 20 at 2–3. However, a party must accept an offer before it can be bound to its terms, and acceptance can occur either through a party's performance or promise of future performance. *Butchers' Advocate Co. v. Berkof*, 158 N.Y.S. 160, 161 (N.Y. App. Div. 1916) (finding that "a mere offer or unilateral promise on the part of the defendant, . . .could ripen into a mutual contract only when the offer was accepted and the acceptance [was] evidenced either by an express promise to perform or by performance."). Thus, DUAL's signature alone cannot bind Plaintiff. Instead, because there is no evidence of a

Having determined that the ordinary meaning of "issued" in the insurance context is susceptible to two reasonable interpretations, the Court next examines whether reading it in the context of the Policy as a whole resolves the ambiguity.[35] Section 32 requires the court to be "in the district in which this policy was issued."[36] The word's surrounding language does not clarify whether "issued" means the place where the policy was sent or received. An insurance policy could be "issued by" a party in one state and "issued to" a party in another state. Without any supporting prepositions or clear subject in the sentence, it is unclear why the location of issuance should be fixed to the district in which Defendants' actions were initiated, rather than where the results of their actions occurred.[37]

Because the Court finds that Section 32 is ambiguous, the Court resolves the ambiguity in favor of Plaintiff as the insured. And while this canon of construction does not apply "in a contest between two insurance companies,"[38] Plaintiff is not an insurance company. Defendants' contention that it would be untenable to construe its own "standard-form policy" as "issued in whichever State each insured happened to occupy," is unavailing since Section 32 still limits the potential forums to two locations—the Southern District of New York or the location of the insured with whom Defendants chose to do business. If Defendants intended for Section 32 to

---

prior promise of performance, Plaintiff's acceptance is evidenced by its initial performance—paying the Policy's premiums from its office in Overland Park, Kansas where the Policy was delivered.

[35] In *Rosner v. Metropolitan Property & Liability. Insurance*, the Court of Appeals of New York was able to construe "the phrase 'as of' . . . in conjunction with the word 'issue,'" when holding that the date of issuance was "a date mutually agreed upon by the parties having some contractual significance, rather than merely referencing the date of an event, such as the execution or delivery of a document." 754 N.E.2d at 480

[36] Doc. 1-1 at 18.

[37] *See Robles v. United Auto. Ins.*, 333 So. 3d 735, 737 (Fla. Dist. Ct. App. 2021) ("In the insurance context, the term 'issued' can mean different things. It can mean delivery to an insured where the insured risk is located.")

[38] *Id.* (quoting *United States Fire Ins. v. Gen. Reinsurance Corp.*, 949 F.2d 569, 573 (2d Cir. 1991)).

permit suits only in their two preferred districts, they could have done so directly by specifically naming the preferred forum.

Therefore, because Section 32's ambiguous language could reasonably be interpreted to permit this Court as a proper forum, the Court denies Defendants' motion to transfer venue.

### III. DUAL's Motion to Dismiss

DUAL individually moves to dismiss Plaintiff's claims against it pursuant to Fed. R. Civ. P. 12(b)(6), and it separately moved for a hearing on this motion. As a preliminary matter, after considering the parties' briefs and the relevant law, the Court denies DUAL's motion for hearing because it would not materially assist the Court in deciding this motion. Moreover, for the reasons below, the Court denies DUAL's Motion to Dismiss.

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[39] and must include "enough facts to state a claim for relief that is plausible on its face."[40] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[41] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[42] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual

---

[39] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Wright & Miller's Federal Practice and Procedure § 1216 (3d ed. 2004)).

[40] *Id*. at 570.

[41] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[42] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

allegations to support each claim."[43] Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[44]

Plaintiff premises its common law breach of contract claim on diversity jurisdiction, and both parties assert without explanation that the Court must apply Kansas substantive law to this claim.[45] However, as the Court explained above, Kansas law generally applies the choice of law that the parties specified in their contract's choice of law provision.[46] Section 32 of the Policy contains a valid and enforceable choice of law provision which provides that the Policy is governed by federal maritime common law, with New York law supplementing the common law if necessary.[47] Thus, consistent with the Policy, the Court will analyze Plaintiff's claim under federal maritime common law.[48]

"Federal maritime law stems from the maritime jurisprudence of the federal courts, and is an amalgam of traditional common law rules, modifications of those rules, and newly created

---

[43] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[44] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[45] *See* Doc. 11 at 2 ("Because this Court sits in diversity, it must apply Kansas substantive law to the claims asserted."); Doc. 17 at 2 (applying Kansas law).

[46] *Brenner v. Oppenheimer & Co.*, 273 Kan. 525, 539 (Kan. 2002); *see also Pepsi-Cola Bottling Co. of Pittsburg v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005) (finding that New York law applied to a plaintiff's breach of contract claim because the contract stated that its "terms and conditions . . . shall be governed and interpreted by New York law.").

[47] Doc. 1-1 at 18 ("This contract of marine insurance and the rights and obligations of DUAL Commercial and the Insured hereunder shall be governed and construed in accordance with federal maritime common law of the United States. In the absence of controlling federal maritime common law . . . , the law of the state of New York shall apply, irrespective of any principles of choice of law.").

[48] *See Patterson v. Williams*, No. 10–cv–4094, 2012 WL 138606, at *2 (D. Kan. Jan. 18, 2012) ("[T]he court is not obligated to analyze a choice of law issue *sua sponte*. But neither is the court prohibited from doing so." (citations omitted)).

rules drawn from state and federal sources."[49] "Under the federal common law, '[t]he elements of a breach of contract claim are [1] the existence of a contract, [2] material breach, and [3] damages.'"[50] These elements mirror those required under Kansas and New York law.[51]

DUAL argues that Plaintiff cannot demonstrate the first element of breach of contract because the Policy is not an insurance contract between Plaintiff and itself, it is an insurance contract between Plaintiff and the carrier defendants, Houston and Chaucer. DUAL claims that it should not be a defendant in this case because it "was not the insurer responsible for coverage under the Policy, did not assume the carrier defendants' contractual obligations, and owed no independent duty to the Plaintiff."[52] DUAL argues that it was only an "agent" under the Policy, and that agents are only "authorized in writing, by any insurance company . . . to negotiate or effect contracts of insurance, suretyship or indemnity on behalf of any such insurance company."[53] DUAL argues that the Policy reflects its limited role, and likewise its limited liability, as an agent. The Court disagrees.

The Policy's plain language states that DUAL is liable for claims arising under Section 46. Section 5, titled POLICY LIMITS, states:

---

[49] *McKinney Salvage LLC v. Sw. Materials Inc.*, No. 2:23-CV-00626, 2024 WL 1664751, at *2 (W.D. La. Apr. 17, 2024) (quoting *Int'l Marine, LLC v. FDT, LLC*, 619 F. A'ppx 342, 349 (5th Cir. 2015)).

[50] *Crown Bay Marina, L.P. v. Reef Transp., LLC*, No. 2018-73, 2021 WL 1244011, at *10 (D.V.I. Apr. 1, 2021) (quoting *Kol B'Seder, Inc. v. Certain Underwriters at Lloyd's of London Subscribing to Certificate No. 154766 Under Contract No. B0621MASRSWV15BND*, 766 F. App'x 795, 803 (11th Cir. 2019)).

[51] *See, e.g.*, *34-06 73, LLC v. Seneca Ins.*, 198 N.E.3d 1282, 1287 (N.Y. 2022) ("[T]o plead a cause of action for breach of contract, a plaintiff usually must allege that: (1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages" (citation modified)); *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013) ("The elements of a breach of contract claim are: (1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach.")

[52] Doc. 11 at 1.

[53] *Id.* at 3. DUAL imports its definition of "agent" from K.S.A. § 40-239, which is inapplicable in this case because the Policy is not governed by Kansas law.

> Unless otherwise agreed DUAL Commercial shall not be liable under this policy for more than:
>
> "As Per Declarations Page" per any one conveyance, connecting conveyance, craft or at any place at any time.
>
> If the total value at risk exceeds the applicable limit of liability provided by this policy, the Insured shall nevertheless report to DUAL Commercial the full amount at risk and shall pay full premium thereon. The acceptance by DUAL Commercial of such reports and premium shall not alter or increase the limits of DUAL Commercial's liability, *but DUAL Commercial shall be liable for the full amount of loss up to but not exceeding the applicable limit of liability.*
>
> If a claim arises from more than one risk, the limits will be applied to the highest limit per risk, unless an aggregate applies, the overall limit will be a combined single limit.[54]

The Court agrees with Plaintiff that this section expressly makes DUAL liable "for the full amount of loss up to but not exceeding the applicable limit of liability." This would include the Losses under Section 46 if Plaintiff prevails on the merits of its suit.[55]

DUAL's brief attempts to provide insight into the logistics of administering the Policy in practice and the limited roles each defendant contributes,[56] but the Policy's language does not reflect those logistics or limited roles. The Policy only mentions the carrier defendants once,[57] and it never expressly states that they are the only parties liable for Plaintiff's claims. In contrast, the Policy repeatedly binds DUAL to rights and

[54] Doc. 1-1 at 4 (emphasis added).

[55] *Id.* at 1 (providing the "Limits of Liability," including for "300,000 Contingent Motor Truck Cargo per truck").

[56] DUAL's argument primarily relies on the factual contention that it was not a party to any claims handling. *See* Doc. 11 at 3. However, the Court does not weigh facts or determine whether DUAL participated in claims handling at this procedural posture. *See Utah Pol. Watch, Inc. v. Musselman*, 179 F.4th 1241, 1251 (10th Cir. 2026) ("We do not 'weigh potential evidence that the parties might present at trial'; we 'assess whether the plaintiff's complaint *alone* is legally sufficient to state a claim for which relief may be granted.'" (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).

[57] Doc. 1-1 at 1.

obligations. And while the Policy limits DUAL's liability throughout, it never disclaims DUAL's liability altogether.[58] Thus, the Policy's plain language demonstrates that the Policy is a contract between Plaintiff and Defendants—including DUAL. The Court therefore denies DUAL's motion to dismiss.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Change Venue (Doc. 13), Defendant DUAL's Motion to Dismiss (Doc. 10), and Defendant DUAL's Motion for Hearing (Doc. 19) are denied.

**IT IS SO ORDERED.**

Dated: September 11, 2026

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

[58] *See, e.g.*, *id.* at 18 ("This contract of marine insurance and the rights and obligations of DUAL Commercial and the Insured hereunder shall be . . . ."); *id*. at 26 ("DUAL Commercial shall not be liable for more than the limit of liability as described below in any one loss, disaster or casualty."); *id.* at 27 ("except that DUAL Commercial's limit of liability with respect to loss or damage caused by. . . ."); *id.* ("If the total value at risk at any one location exceeds the applicable limit of liability, DUAL Commercial shall in no event be liable for more than the full amount of loss up to but not exceeding the applicable limit of liability.").